PETER W. LITTLE and MARY his wife, and JOHN M'FAR-
LAND and ELIZABETH his wife, *against* ROBERT HODGE
and DANIEL CLARK.

IN ERROR

The mode of appropriating donations in land, to the officers and soldiers of
the Pennsylvania line, in the revolution, adopted after the war.

The officers of the government entrusted with the appropriation of dona-
tion land, could at no time give a patent to an applicant for any tract he
might ask.

A patent for a tract of donation land is void, unless given after drawing, and
for the number drawn.

If one man draw a number, and a patent for the land designated by that
number were issued to another man, such patent would be void; and the
man who drew the number would be entitled to the land.

Where any officer, or soldier once drew a number, in no event could he,
or any one in his name or right, afterwards draw another tract.

Independent of any other evidence, a patent for donation land would be
presumptive evidence that the patentee had drawn the number for which
such patent had issued to him; although his name did not appear in the
comptroller's list, or on the general draft.

But such presumption would not prevail where his name did appear in
another number, and a patent had issued to him for that number, and
where the number for which his patent issued, without having his name
in it, was subsequently drawn from the wheel in the name of another.

WRIT of error to the Court of Common Pleas of Mercer county.
The action was ejectment to recover a tract of donation land,
containing two hundred acres, No. 763, in district number 4.
The plaintiff made title through *Robert Parker*, a lieutenant in the
Pennsylvania line, and exhibited a patent to him for lot No.
763, 4th district, dated the 28th day of February 1794, the general
draft of that district, in which his name appeared in that number,
and also the comptroller's list, in which No. 763, in the 4th
district, is set down opposite to his name as having been drawn by
him.

The defendants rested their title on a patent to *Hinderliter*,
assignee of *John Whiteman*, for lot No. 763, in the 4th district,
(being the same lot,) dated the 12th day of September, 1790. To
defeat which, the plaintiff gave in evidence the following extract
from the general draft of donation land in district number 9.

No. 1786.

No. 1778. | *John Whitman*, No. 1776. | No. 1775.

No. 1771.

They also gave in evidence a certified extract from the comp-
troller's list, in which the name of *John Whiteman*, private, was
inserted, and opposite to it two hundred acres, No. 1776, 9th

(Peter W. Little and Mary his wife, and John M'Farland and Elizabeth
his wife, *v.* Robert Hodge and Daniel Clark.)

district, and that this was the only entry on the said list in the name
of *John Whiteman.*

They also gave in evidence a patent to *John Whiteman* for lot
No. 1776, 9th district, dated 18th April, 1787.

The plaintiffs' counsel requested the court to charge the jury:

"1st. That if the patent for the tract of land in dispute was
made and delivered to *Hinderliter*, as assignee of *Whiteman*, it
would vest no title in him, unless the number of this tract had been
drawn from the wheel previously to either *Whiteman* or *Hinderliter*,
and that of this fact the jury must judge from the evidence given
on the trial.

"2d. That the patent to *Hinderliter*, which had been given in
evidence, unless the name of *Hinderliter* or *Whiteman* was inserted
in the general draft, and within the lot, must be postponed to the
patent of the plaintiff; if the jury believe the name of *Robert Parker*
was inserted in the general draft, and within the lot at the time it
was drawn."

The court charged the jury on the first point: that "the grant-
ing of the patent is evidence of the drawing of the numbers." And
on the second point, that "this omission by the officers of the State,
would not vitiate a patent, if otherwise fairly obtained."

Several errors were assigned, which are substantially embraced
in the points above stated, and the answers of the court thereto.

*Foster*, of Mercer, for the plaintiff in error, argued,

That there was a difference between a patent granted by the
States, and the king of England. The former gives no title, but
is *prima facie* evidence of title, the latter vests title until it is
vacated. The one can always be contested by any other claimant
to the land, the other cannot. 2 *Smith*, 191. He cited the 12th,
13th and 14th section of the act of 1785, 2 *Smith*, in relation to
donation lands.

The evidence given, negatived the idea of regularity in the first
grant.

A patent is only *prima facie* evidence of a regular title. It may
be obtained by fraud, or issued by mistake; it is not conclusive.
*Benner* v. *Baker*, 4 *Bin.* 218.

The first patent was issued without observing the requirements
of the act of assembly, and must be postponed to the subsequent
regular title.

The assignee of a patent is in no better equity than the assignor.
*Gonzalus* v. *Hoover*, 6 *Serg. & Rawle*, 118.

The court did not answer the points fully: they did not tell the
jury what the law would be, if the number in the patent had never
been drawn. *Vincent* v. *Huff*, 4 *Serg. & Rawle*, 298. The court
took the facts from the jury.

The patent to *Hinderliter* was but *prima facie* evidence of the

(Peter W. Little and Mary his wife, and John M'Farland and Elizabeth his wife, *v.* Robert Hodge and Daniel Clark.)

facts recited; and the presumption of regularity is removed by proof that it had not issued according to law.

It is the appropriation of the land by the legislature, and not the patent, which gives the title.

The entry of the name in the general draft is made a record, in lieu of recording the patent.

Of *Hinderliter's* patent there was no notice to *Parker* when he drew, in 1794, this number; and the former is guilty of that sort of laches which should postpone his claim.

*Moore* and *Ayres*, contra.

The patent is evidence *per se* until invalidated by conflicting evidence. Fraud is not to be presumed.

The patent could not have issued, unless the number which it calls for had been drawn; and so is the charge of the court. And if the number had been drawn, the omission on the part of the officers intrusted with the duty to insert the name in the number in the general draft, and the number opposite to the name on the comptroller's list, would not vitiate the patent. The mistake of the officers could not affect the title, and therefore the first patent must prevail. No fraud was proved, and besides, the finding of the jury proves that *Whitman* and *Whiteman* were different persons.

The law does not say that the connected draft *shall be a record.*

These drawings for donation lands commenced in 1794, and continued until 1804. If the plaintiff's draft had been antecedent to the defendant's patent, there might be some weight in their claim, but we are first in time, and therefore first in right.

The court declined hearing *Banks*, for the plaintiff in error, in reply.

The opinion of the court was delivered by

Huston, J.—During the war of the revolution, our legislature promised donations in land to the officers and soldiers of our army; and after the war, measures were taken to survey the lands, and very particular direction given as to the mode of appropriating a tract to each soldier, in such manner that each might have the proper quantity, and no more, and might be able to ascertain with certainty the tract allotted to him. After the lands were all surveyed, and numbered, a general draft or drafts made, in which the number was inserted in each tract, a list of officers and soldiers entitled to lands made, see section 9th of the act of 24th March, 1785, and after every thing was prepared, a number was drawn for each.

The number drawn was put in a column annexed to the list, opposite the name of the person for whom it was drawn, and the name of the person, who drew a particular number, was inserted in that number in the general draft. This general draft was to be kept by the executive council until all applications were satis-

(Peter W. Little and Mary his wife, and John M'Farland and Elizabeth his wife, *v.* Robert Hodge and Daniel Clark.)

fied, and then to be deposited in the office of the master of the rolls; *as a public record to serve to all intents and purposes in lieu of recording the patent:* when the persons intrusted, who under the old constitution, were three of the members of the executive council, closed the drawing at any time, the wheels were closed, in their presence, and sealed; and so continued deposited carefully and safely, until further drawing was required. It was then not easy after a name had once drawn a number, to return that number into the wheel. When a name had drawn a particular number, not only was the number set down opposite the name, but also the name was inserted in that number, in the general draft, and a report was made of the name which drew, and of the number drawn to the President, or Vice President, who caused a patent to be made out, &c.

Notwithstanding all these precautions it seems mistake, or fraud has occasioned two patents to issue for the same tract; and we are to decide which is entitled to the land.

The officers intrusted could at no time proceed to give a patent to an applicant, for any tract he might ask. The law was imperative, he must take an equal chance, every one must draw, and he could not have the tract which he wished, or which the officers wished to give him; a patent would be, and is void, unless given after drawing, and for the number drawn. This matter was submitted to the court, and overlooked in the opinion.

What was done in the present case? We have evidence that only one person of the name of *John Whiteman* was in the comptrollor's list.

There is evidence that *John Whiteman* drew number 1776, in the 9th district, in the year 1787, and on the 18th of April 1787, a patent issued for this tract, number 1776, in the 9th district, to *John Whiteman.*

Either this patent issued to the same man, (his name being spelled slightly different,) who drew number 1776, or to a different man, if to the same man, he has that tract, and is entitled to no more, and any claim he makes, or which any one under him makes to any other tract, must be a claim founded in dishonesty and fraud. If the patent issued to a man different from him who drew number 1776, that is, if *John Whiteman,* who got the patent, was a different man from him who drew number 1776, then the patent for that number is void, and *John Whiteman* is yet entitled to number 1776, and to a patent for it: but if there is but one *John Whiteman,* and he drew number 1776, in 1787, in no event can he draw another tract afterwards, nor can any one in his name or right obtain a patent for another tract.

It is true, that independent of any other evidence, a patent would be presumptive evidence, that the patentee had drawn the number

(Peter W. Little and Mary his wife, and John M'Farland and Elizabeth his wife, *v.* Robert Hodge and Daniel Clark.)

for which a patent issued to him; and we might suppose his name had not been inserted in the list of those who drew, or that the number drawn had through mistake, or neglect, not been set opposite his name; and further, that from another mistake or neglect, his name had not been inserted in the general draft, in the tract which he drew, and it would be a great deal to suppose all this, but here we are asked to do much more; to throw away the evidence that he drew number 1776, and to suppose, without evidence, that his assignee drew number 763, in 1791; and further that after he drew it, and after neglecting to insert his name in that number, in the general draft, and set that number opposite his name in the comptroller's list, we must suppose the officers put number 763 back into the wheel, wickedly and corruptly: for that number was found in the wheel in 1794, when it was drawn out by *Robert Parker.*

I can appreciate the feelings of the judge, and his sympathy for the defendant, who has unfortunately purchased under a *fraudulent* patent, and spent time and labour in improving the land; but a little reflection will show us that he must bear his own loss, or obtain compensation from *Hinderliter.*

It never can be, that the owner of a tract of land must lose it, because a title to it has been forged, and by that forgery an innocent person has been imposed on. If any person is to apply to the State for redress, it must be the defendant.

The officers of the State have done an act which has injured him. The plaintiff's right is regular and complete; and courts and juries will see that such a right is not to be given away from pity.

Judgment reversed, and a *venire facias de novo* awarded.